# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
|     Plaintiff, | : |
| v. | : Criminal Action No. 17-63-LPS |
| JERRY JINDONG XU, | : |
|     Defendant. | : |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO PREVENT SERVICE OF PROCESS PURSUANT TO CANADIAN MLAT

Without any legal citation, Defendant seeks to prevent the United States from honoring its basic treaty obligations under the 1985 Treaty with Canada on Mutual Legal Assistance in Criminal Matters (hereinafter "Treaty" or "MLAT") by refusing to accept service of legal documents. As detailed below, the United States' MLAT with Canada sets forth unambiguous conditions of cooperation, including the *service of documents*.

Here, at the request of the United States, Canadian law enforcement executed a search warrant on Defendant's Canadian residence on the same day he was arrested in New York. During the search, Canadian law enforcement seized numerous documents and electronic devices in connection with this case. The Canadian Attorney General now requests the United States honor its side of the treaty by serving Defendant with the instant legal documents to provide him notice of an upcoming court hearing in Canada. The purpose of this hearing is to determine whether Canada will transfer the seized evidence to the United States. Service of these documents conforms with the United States' basic MLAT obligations and will prevent any further delay in this hearing. Accordingly, the Court should deny Defendant's meritless claim and permit the government to serve Defendant with these legal documents.

**BACKGROUND**

On or about August 21, 2017, a criminal complaint was executed in the District of Delaware charging Defendant with conspiring to misappropriate trade secrets in violation of 18 U.S.C. § 1832(a)(5).

On or about August 22, 2017, Defendant was arrested for this offense in the Northern District of New York. The same day Defendant was arrested, Canadian law enforcement executed a simultaneous search of his residence in Mississauga, Canada, for evidence related to the criminal complaint executed in Delaware. Canadian law enforcement conducted this search pursuant to a request made by the United States under Article II of the existing MLAT. (Ex. A.) Canadian law enforcement seized a number of documents and electronic devices determined to be relevant to the search warrant.

On or about September 5, 2017, a grand jury in the District of Delaware returned an Indictment charging the defendant with conspiring to commit theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(5).

On or about December 29, 2017, the Department of Justice, Office of International Affairs ("DOJ-OIA") received a request from the Canadian Attorney General's office to serve Defendant with three legal documents in order to provide Defendant notice that a "sending hearing" was set to occur on January 22, 2018.[1] The purpose of this "sending hearing" is to determine whether a Canadian court will grant the Canadian prosecutor's application to transfer the seized evidence to

---

[1] For purposes of Article I of the Canadian/United States MLAT, DOJ-OIA is deemed the "Central Authority" for the United States. (Ex. A at 1.)

the United States. The documents requested to be served included: (1) Application Record (Ex. B); (2) Factum (Ex. C); and (3) Book of Authorities (Ex. D). According to the Canadian Attorney General's office, these documents were to be served by January 5, 2018, otherwise the "sending hearing" would be delayed until an unknown date. DOJ-OIA determined this request to be valid under our existing MLAT agreement with Canada and, in accordance with 18 U.S.C. § 3512, forwarded this request for execution to the U.S. Attorney's Office in Delaware.

On December 29, 2017, after receiving this notification from DOJ-OIA, the U.S. Attorney's Office contacted counsel for Defendant to inform counsel that personal service of the documents listed above was requested before January 5, 2018. Defense counsel requested an opportunity to confer with their client.

On January 2 and 3, 2018, the U.S. Attorney's Office conferred with defense counsel regarding service of these documents. Defense counsel refused to permit the government to serve these documents personally on Defendant, and indicated that they intended to file an emergency motion with the Court to prevent such service.

Defendant currently resides at the Federal Detention Center in Philadelphia. While the government originally arranged for Defendant to be served on January 4, 2018 at 10:00 a.m., that time has been stayed pending resolution of this matter – though the government requests it be permitted to serve these documents no later than January 5, 2018, to prevent any delay in the "sending hearing."

## LEGAL STANDARD

MLATs are Mutual Legal Assistance Treaties "between the United States and other countries, which allow signatory states to request one another's assistance with ongoing criminal

investigations, including issuance and execution of search warrants." *Microsoft Corp. v. United States*, 829 F.3d 197, 221 (2d Cir. 2016). MLATs "contractually obligate the two countries to provide to each other evidence and other forms of assistance needed in criminal cases while streamlining and enhancing the effectiveness of the process for obtaining needed evidence." *In re Commissioner's Subpoenas*, 325 F.3d 1287 (11th Cir. 2003) (reviewing language of Canadian MLAT). The United States has entered into approximately 56 MLATs with foreign countries, including all member states of the European Union, and holds related Mutual Legal Assistance Agreements with others. *See id*. n.29; U.S. Dep't of State, Treaties & Agreements, https://www.state.gov/j/inl/rls/nrcrpt/2012/vol2/184110.htm (last accessed January 3, 2018).

In 2009, the Foreign Evidence Request Efficiency Act, 18 U.S.C § 3512, increased the roles of both DOJ and district courts in facilitating and executing requests under mutual legal assistance treatises. *See United States v. Trs. of Boston College (In re Price)*, 831 F. Supp. 2d 435, 448 (D. Mass. Dec. 16, 2011). For DOJ, the principal purpose of § 3512 was to streamline foreign evidence requests "mak[ing] it easier for the United States to respond to requests by allowing them to be centralized and by putting the process for handling them within a clear statutory system." *Id*. (Citations omitted). For district courts, § 3512(a)(1) sets forth clear language that, "[u]pon application,…, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance." *See* 18 U.S.C. § 3512(a)(1) and (f); *Id*. at 449. Thus, courts act as "gatekeepers in using their discretion to review MLAT requests." *Id*.

The United States' MLAT with Canada creates obligations on the part of each nation regarding criminal matters during both the pre-charge investigation and post-charge prosecution

4

stages. *In re Commissioner's Subpoenas*, 325 F.3d at 1295. Indeed, the Preamble makes clear that, "The Treaty provides for a broad range of cooperation in criminal matters. Mutual Assistance available under the treaty includes … (3) the execution of requests for searches and seizures; and (4) the serving of documents …." (Ex A at 1.) Other sections of the Treaty emphasize these points of cooperation, including Article II, *Scope of Application*, which provides for "mutual legal assistance in all matters relating to the investigation, prosecution and suppression of offenses," (*id*. at 4), and, Article XI, *Service of Documents*, which states:

1. The Requested State *shall* serve any document transmitted to it for the purpose of service.

2. The Requesting State *shall* transmit a request for the service of a document pertaining to a response or appearance in the Requesting State within a reasonable time before the scheduled response or appearance.

3. …

4. The Requested State *shall* return a proof of service in the manner required by the Requesting State or in any manner agreed upon pursuant to Article XVIII.

(*Id*. at 6.) (Emphasis added.) Thus, the Treaty unambiguously contemplates mutual cooperation by serving documents on relevant parties within the United States and Canada – presumably to provide notice to individuals of pending legal actions. *United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000) ("If the language of the treaty is clear and unambiguous, as with any exercise in statutory construction, our analysis ends there and we apply the words of the treaty as written.").

## ARGUMENT

Applying the principles outlined above, both the underlying factual basis for Canada's request and the plain language of the Treaty obligates the United States to serve the instant legal

documents on Defendant. To begin, the United States *initiated* the Treaty provisions in the first instance by requesting Canada execute a search warrant of Defendant's Canadian residence during the investigation. A Canadian court subsequently approved the search warrant and Canadian law enforcement executed the search the same day Defendant was arrested in the United States. The Canadian Attorney General now seeks to conclude this process by serving the instant legal documents on Defendant so that he is notified of the court hearing regarding the evidence seized from his home.

In this regard, the United States' obligations to Canada under Article XI are straight forward. First, Article XI is entitled "*Service of Documents*" – an express obligation that is mentioned both in the Preamble and in the text of the Treaty. (Ex. A at 1-4.) Second, this article delineates a process by which the Requested State (here the United States) "*shall* serve any document transmitted to it for the purpose of service." (*Id*.; emphasis added) Third, the Requested State "*shall* return a proof of service" that it has complied with its service obligations. (*Id*.; emphasis added) Given these unambiguous obligations, if the United States did not serve these documents on Defendant it would create a perverse situation where our country requested Canada's assistance, but cannot comply with its own treaty obligations on the back end. *See Restatement (Third) of Foreign Relations § 325* cmt. d ("Treaties that lay down rules to be enforced by the parties through their internal courts or administrative should be construed so as to achieve uniformity of result despite differences between national legal systems.").

Finally, Article VII, *Execution of Requests*, requires that any request must be in accordance with the laws of the Requested State. (Ex. A at 6.) Here, there is no prohibition against serving Defendant with the instant legal documents. Defendant's Sixth Amendment right, for example,

does not apply because serving documents is not considered a "critical" stage in the trial process. *Rothgery v. Gillespie County, Tex.*, 128 S.Ct. 2578, 2591 n.16 (2008). "[W]hat makes a stage critical is what shows the need for counsel's presence." *Id.* "The cases have defined critical stages as proceedings between an individual and agents of the State (whether 'formal or informal, in court or out,' *see United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)) that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or ... meeting his adversary ....'" *United States v. Ash,* 413 U.S. 300, 312–313, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); *see also Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Serving documents does not constitute such a stage, and Defendant points to no authority to suggest otherwise.[2]

## CONCLUSION

Accordingly, given the underlying facts that precipitated the request by Canada to serve Defendant with these documents and the United States' clear obligations set forth in the MLAT with Canada, the Defendant's motion should be rejected.

Respectfully submitted,

DAVID C. WEISS
ACTING U.S. ATTORNEY

BY: /s/ Jamie M. McCall
Jamie M. McCall
Alexander S. Mackler
Assistant United States Attorneys

---

[2] Other examples of post-Indictment acts that do not constitute "critical stages" during which counsel's presence is required, include: (1) photo identifications, *see Ash,* 413 U.S. at 312–313; (2) parole hearings, *see McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000); and (3) probation revocation hearings, *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973); *United States v. Kelley*, 446 F.3d 688, 691 (7th 2006).