IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES OF AMERICA      :
         :
     v.          :      CRIMINAL NUMBER 17-CR-0063-LPS
         :
         :
JERRY JINDONG XU      :

ORDER

AND NOW, this      Day of      , 2018,  it  is  ORDERED  that the defendant's Omnibus Motion to Dismiss the Indictment  is

**GRANTED.**

BY THE COURT:

_____
         J.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 17-CR-0063-LPS |
| | : | |
| | : | |
| JERRY JINDONG XU | : | |

## **OMNIBUS MOTION TO DISMISS THE INDICTMENT**

Defendant, Jerry Jindong Xu,  by and through counsel,  Jeremy H.  Gonzalez  Ibrahim and Carrie Goldner Cinquanto, requests that the Court dismiss the Indictment filed against him and in support thereof it is respectfully represented:

1. The defendant was indicted by a Grand Jury for the District of Delaware on an Indictment filed September 5th 2017,  alleging Conspiracy to Steal Trade Secrets in violation of Title 18 U.S.C. §1832(a)(2) and §1832(a)(5), and Notice of Forfeiture.

2.  The Indictment filed against the defendant fails inasmuch as it does not convey jurisdiction to the district court.

3.  The Indictment filed against the defendant is filed in the improper venue, however the defendant seeks to waive this issue and consent to venue in the District of Delaware.

4.  The Indictment alleges that defendant engaged in conduct largely while he resided in Canada, pertaining to projects that were exclusively germane to Canada:

A. The defendant is a citizen of Canada. Indictment at paragraph [8].

B. The alleged conspiracy to steal trade secrets related to Projects Midas, Or, and Coyote.  Indictment at paragraph [15].

C. Project Midas, Project Or, and Project Coyote were Business projects designed to increase the profitability of its' cyanide-based products in Canada. Indictment at paragraph [4].

D. The purpose of Project Midas was to analyze the factors necessary to create a profitable sodium-cyanide plant in Canada. Indictment at paragraph [4].

E. The purpose of Project Or was to improve the supply chain design for delivering sodium cyanide products to eastern Canada, and included a planned facility to store and handle sodium cyanide products in a safe manner. Indictment at paragraph [5].

F. The purpose of Project Coyote was to design and build a next generation technology sodium-cyanide plant (in Mexico). Indictment at paragraph [6].[1]

G. The alleged object of the conspiracy was to use the information from Project Midas, Or and Coyote to facilitate export of sodium cyanide products from a non-U.S. source into the Canadian market and obtain non-U.S. investors to build a sodium cyanide plant in Canada.

H. As part of the manner and means for the alleged conspiracy, the defendant created a Canadian company, under the corporate laws of Canada. Indictment at paragraph [17(c)].

---

[1] It is disturbing that Chemours chose to name the Mexico project "Coyote" given the grave human rights issues created by those in the region who use this label in the vernacular.

I. As part of the manner and means for the alleged conspiracy, the

defendant is alleged to have had discussions with non-U.S. individuals

regarding the export of sodium cyanide and building a sodium cyanide

plant in Canada. Indictment at paragraph [17 (c) & (d)].

5. In furtherance of the conspiracy, the Indictment alleges approximately forty-

nine (49) Overt Acts. The overwhelming substance of the overt acts details conduct that occurred

outside of the United States. The only District of Delaware contact pled as overt acts are

disclosed in paragraphs 29 (referencing an email to a Chemours employee based in Wilmington,

DE). No information is pled that establishes that this employee actually works in the District of

Delaware. The only other overt acts refer to conduct that relates to activity in the United States

District Court for the Western District of Tennessee. See paragraphs 54, 55, 56 and 57 (all

referencing a tour of a manufacturing plant in Memphis TN).

6. In the course of his arrest, a statement was unlawfully secured from the

defendant. In addition, several search warrants were issued that did not have a lawful basis.

6.  The attached Memorandum of Law is incorporated  herein by reference.

7. Appended hereto is a companion Motion to Dismiss with associated

Memorandum of Law that has been submitted by the defendant, through counsel, for the Court's

consideration for the relief requested.

WHEREFORE, for the foregoing reasons, Jerry Jindong Xu respectfully requests

that the Court grant the Motion to Dismiss the Indictment filed against him, or in the alternative,

transfer the case the  United States District Court for the Western District of Tennessee.

Respectfully submitted,

_____/s/_____
JEREMY H.G. IBRAHIM, ESQUIRE

_____/s/_____
CAROLINE GOLDNER CINQUANTO, ESQUIRE

Date: January 25, 2018

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

UNITED STATES OF AMERICA  :
          :
v.        :  CRIMINAL NUMBER 17-CR-0063-LPS
          :
          :
JERRY JINDONG XU   :

**MEMORANDUM OF LAW IN SUPPORT OF THE
OMNIBUS MOTION TO DISMISS THE INDICTMENT**

The defendant has been indicted for alleged violation of Title 18 U.S.C. §1832(a)(2) and §1832(a)(5). In pertinent part, the charge states:

*(a) Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—*

*(1) . . .*

*(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;*

*(3) . . .*

*(4) . . .*

*(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, . . .*

Relevant to a complete reading of the statute for the purposes of this motion is §1837(2) which states:

> *This chapter also applies to conduct occurring outside the United States if—*
>
> *(1) . . .; or*
>
> *(2) an act in furtherance of the offense was committed in the United States.*

## JURISDICTION

The issue is "whether an act in furtherance of the offense was committed in the United States." First, "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 2102 (2016) *citing* Morrison v. National Australia Bank Ltd., 130 S.Ct. 2869, 2883 (2010). *See also* Microsoft Corp. v. AT & T Corp., 550 U.S. 437, 455–456, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007). The Indictment pleads two instances over the course of the charged conduct upon which hinge the Court's jurisdiction over the defendant, i.e. whether *an act in furtherance of the offense* was committed in the United States. One overt act references an email sent alleged to have been sent by the defendant in Canada to a Chemours employee in Wilmington. The second overt act relates to alleged surreptitious photographs taken by the defendant during a visit to a Chemours plant in Memphis, Tennessee.

The email is at issue because the *act* purported to be "in furtherance" was the sending of the email from Canada. It is inconsequential to the statute whether the Chemours employee received the email in Delaware or elsewhere, or whether the employee acted on the request. It cannot be said that an act in furtherance of the offense occurred in the United States by the virtue of the defendant sending an email from Canada to the United States. The Memphis plant

4

allegations, cannot all be said to be in furtherance of the charged offense. The averments that speak to the defendant sending emails from Canada are not acts in furtherance of the offense that were committed in the United States. The single, and only conduct committed in the United States, per the Indictment, is the alleged photographs taken at the Memphis plant. This sole contact is grossly insufficient for nexus purposes (and certainly do not convey venue to the District of Delaware).  " 'In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.' " United States v. Al Kassar , 660 F.3d 108, 118 (2nd Cir., 2011). "For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests. Id. citing United States v. Peterson, 812 F.2d 486, 494 (9th Cir.1987). Noteworthy for this analysis is that there is not universal agreement that theft of trademark secrets is a criminal offense - indeed Canada has no such criminal statute.[2] The Indictment at paragraph 16 states:

**OBJECT OF THE CONSPIRACY**

*16. It was an object of the conspiracy to steal and convert Chemours' trade secrets and*

*confidential and proprietary information relating to Projects Midas, Or, and Coyote; to use*

*those trade secrets and confidential and proprietary information to facilitate*

*exports of Chinese manufactured sodium cyanide products into the Canadian mining market*

*and to obtain investors from China to build a sodium cyanide plant in Canada.*

---

[2]*See  e.g.,*   https://www.ic.gc.ca/eic/site/cipointernet-internetopic.nsf/eng/wr03987.html;
http://www.pinskylaw.ca/resources/iplaw/trade-secret-protection.html.

The Indictment is unambiguous that the object of the defendant's actions was to build a sodium cyanide plant in Canada. Neither of the two overt acts that provide contact suffice to provide the minimum contacts necessary to establish a jurisdictional nexus that comports with Due Process. Further, because the offense charged is not a criminal offense in Canada, the due process concern is exacerbated. *See* U.S. v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (C.A.3 (Virgin Islands), 1993)("we acknowledge that there might be a due process problem if Congress provided for the extraterritorial application of United States law to conduct on the high seas without regard for a domestic nexus if that conduct were generally lawful throughout the world."). *See also*: United States v. al Kassar, 660 F.3d 108, 118 (2d Cir. 2011)("In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair")*;* United States v. Baston, 818 F.3d 651, 669-70 (11th Cir. 2016) ("The Due Process Clause requires at least some minimal contact between a State and the regulated subject"); United States v. Rojas, 812 F.3d 382, 393 (5th Cir. 2016); United States v. Medjuck, 156 F.3d 916, 918 (9th Cir. 1998)("to satisfy the strictures of due process, the Government [must] demonstrate that there exists a sufficient nexus between the conduct condemned and the United States such that the application of the statute [to the overseas conduct of an alien defendant] would not be arbitrary or fundamentally unfair to the defendant"); United States v. Perlaza, 439 F.3d 1149, 1160-161 (9th Cir. 2006); United States v. Moreno-Morillo, 334 F.3d 819, 828 (9th Cir. 2003).

## VENUE

The defendant has instructed counsel to not file a challenge to venue in the District of Delaware. Given that an argument exists supporting a challenge to venue[3], the defendant must be waive this issue on the record.

## MOTION SUPPRESS

## INTRODUCTION

Defendant, Jerry Jindong Xu, by and through counsel, Jeremy H. Gonzalez Ibrahim and Caroline Goldner Cinquanto, respectfully requests that the Court suppress statements made by Mr. Xu on August 22, 2017, as well as documents obtained by warrant from Yahoo and Google and in support thereof states:

---

[3]The defendant has a right to be tried in the district wherein the offense was committed. United States v. Perez, 280 F.3d 318, 329 (3d Cir.2002). The defendant is charged with an offense that was committed in Canada. The statute under which the defendant has been charged has no built in venue provision. In situations where, such as here, Congress has "not indicate[d] where it consider[s] the place of committing the crime to be," the district court should determine jurisdiction "from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Rodriguez–Moreno, 526 U.S. 275, 279 n. 1, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). Inasmuch as the offense clearly occurred in Canada, and is "essentially foreign, venue is to be determined under 18 U.S.C. §3238." U.S. v. Pendleton, 658 F.3d 299 (3rd Cir., 2011):         18 U.S.C. §3238 - Offenses not committed in any district:

*The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.*

Therefore, the proper venue is the federal district of arrest, to wit,  the Northern District of New York.

## MOTION TO SUPPRESS STATEMENTS

### FACTUAL BASIS

On August 22, 2017, Mr. Xu was taken into custody by Agents from the Federal Bureau of Investigation (FBI).  During this time, Mr. Xu was detained in a small room by FBI agents and not free to leave.  While Mr. Xu was in the custody of law enforcement, he gave a videotaped statement. This statement was made by Mr. Xu without the benefit of any Miranda warnings being read to him by any of the law enforcement agents who held him in custody.  Agents began the interview with Mr. Xu at approximately 9:05 a.m.  The interview concluded at approximately 9:12 a.m. Mr. Xu is a citizen of Canada.  At the time of his arrest, he was visiting New York with his wife and two children.

### ARGUMENT

Mr. Xu's statements were made while in the custody of law enforcement agents.  He was detained in a small room and not free to leave.  His inability to leave is evident from the fact that Mr. Xu was taken from the interrogation room directly to his Detention Hearing, where the government opposed his release from custody.  Clearly, Mr. Xu should have been apprised of his Miranda warnings prior to any questioning by law enforcement agents.  Miranda v. Arizona, 384 U.S. 436 (1966).  The requirement that Miranda warnings be given before custodial interrogation provides "practical reinforcement" of the Fifth Amendment right against self-incrimination. New York v. Quarles, 467 U.S. 649, 654 (1984).   This "practical reinforcement" is particularly important when the Court considers that Mr. Xu is not a citizen of the United States and was likely unaware of the constitutional protections afforded to him while in this country. Consequently, Mr. Xu's statements to law enforcement authorities must be suppressed.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

**FACTUAL BASIS**

Pursuant to several warrants, Mr. Xu's account data for email address xtrachemical@yahoo.com was obtained from Yahoo and his account data for email addresses jxu1441@gmail.com, BIBS.INC@gmail.com, dbcoys@gmail.com was obtained from Google.

ARGUMENT

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983) (emphasis added). The deficiency of the affidavits in support of the warrants in the case at bar is the failure to establish probable cause that a violation of law has occurred, i.e. the failure to satisfy the commission element. The applications and affidavits identify 18 U.S.C. §371 and 18 U.S.C. §1832 as the criminal offenses for which the evidence is being sought through the warrant. These are also the offenses which Mr. Xu has been charged in the Indictment returned on September 5, 2017. Within this Omnibus Motion is a Motion to Dismiss the Indictment. The Memorandum of Law supporting the dismissal motion is incorporated herein by reference as it provides substantially more detail on the absence of a viable criminal offense in the case at bar. As the dismissal motion clearly establishes, there is no cognizable crime present in the instant case and, consequently, all information regarding Jerry Xu's email accounts registered with Yahoo or Google should be suppressed.

## CONCLUSION

The Indictment sets forth allegations that criminally charge the defendant in the United States, with offense conduct that occurred outside of the United States. The conduct does not constitute a criminal offense in Canada, the locus of the offense conduct. The Court lacks jurisdiction over the defendant for the reasons set forth above. In addition, proper venue for this prosecution, assuming jurisdiction is vested in our federal courts, is in the Northern District of New York. In addition, based upon the foregoing argument and authorities, Mr. Xu respectfully requests that this Honorable Court to suppress all statements made by Mr. Xu, as well as any documents obtained by Google and Yahoo.

### COMPANION MOTION TO DISMISS BY JERRY XU

The defendant, Mr. Xu, respectfully moves this Honorable Court to dismiss the Indictment which a grand jury, sitting for the District of Delaware, returned on September 5,2017, charging him with conspiracy to steal trade secret information, in violation of 18 U.S.C 1832(a)(s).

### STATEMENT OF FACTS

The government brings this action in response to a request for prosecution from Chemours, a Delaware based chemical company which was formed after DuPont spun-off its Performance Chemical Platform from its other business. Chemours, who is the world's largest producer of solid sodium cyanide, has a subsidiary incorporated under the laws of Ontario Canada where the basis of the allegations originated.

Mr. Xu, a Canadian Citizen, was an employee of The Chemours Canada Company, located in Ontario Canada and held a position marketing Chemours sodium cyanide products in

Canada's mining markets. E.I. duPont Canada/ The Chemours Canada Company conditioned Mr. Xu's employment with the company to the execution of a confidentiality and proprietary information agreement (referred to hereafter as "NDA") which was agreed upon to regulate the handling or conduct with certain information that included, but not limited to, confidentiality, proprietary, trade secret information, intellectual, developed property inventions. The NDA incorporated a choice of law and choice of forum clause which made explicit enforcement, performance construction of the NDA would be under the laws of Ontario, the jurisdiction of its courts.

The government alleges that Mr. Xu used his position with The Chemours Canada to obtain trade secret, confidential and proprietary information related to 3 projects of Chemours: Midas, Or and Coyote, by downloading the information from his work email to his personal email accounts, it further alleges Mr. Xu conspired with CC#1 along with investors in China, to convert that information to build a sodium cyanide plant in Canada. In furtherance of this purported conspiracy, the government alleges Mr. Xu, while on a tour of a Chemours sodium cyanide plant in Memphis, Tennessee, took 5 unauthorized photos of confidential and proprietary system diagrams located within a general area of the plant.

Omitted from the indictment but relevant to the instant motion, on or about June 20, 2016, Mr.Xu employment with The Chemours Canada was terminated for reasons unrelated to the allegation by the government. However, due to the allegations of the breach of the NDA, The Chemours Canada refused to provide Mr. Xu with the agreed severance package. Mr. Xu consequently filed a civil suit in the Canadian courts. Chemours replied with a countersuit alleging the facts stated above and thereafter, the U.S. Government filed the instant indictment. It

is on these facts Mr. Xu raises the following challenges:

1) Prosecution and punishment, civil or criminal, under U.S. trade secret laws in this case are barred by the due process clause void for vagueness doctrine. When Chemours Canada conditioned Mr. Xu's employment upon the execution of a NDA that governed its confidential, proprietary and trade secret information, to be enforced and construed under the laws and jurisdiction of Ontario courts in Canada, and neglected to informed Mr. Xu that as a consequence of his employment he would be subject to criminal punishment under U.S. trade secret laws, it failed to give Mr. Xu fair notice of U.S. trade secret laws governed instead of Canada law which does not attach criminal punishment to the conduct alleged.

2) International Comity compels a dismissal of this indictment. Chemours Canada entered into a binding NDA with Mr. Xu, a Canadian Citizen, where it made clear that any breach of it terms would entitled performance and injunctive relief, construed, performed and enforced under Ontario laws in its jurisdiction. To allow this prosecution, after Chemours was binded by those terms and its choice of law jurisdiction being Ontario, would undoubtedly cause international conflict with U.S. subsidiaries in other countries. It also violates principles of reasonableness, customary international law and variety of other principles comity urges dismissal on. And;

3) 18 U.S.C. 1832 fails to overcome the presumption against extraterritorial application, as applied to the facts and circumstances of this case. Recent supreme court precedent makes clear in exceptional situations such as this particular one at bar, courts has the sound discretion to bypass step one of the presumption inquiry and proceed to step 2 as to not depart from the general rule of constitutional avoidance or produce and contrary result from what congress intended-like causing international tensions with other countries domestic trade secret policies.

Accordingly, for the foregoing reasons and those further detailed in the accompanying memorandum of law, the court should grant Mr. Xu's motion and dismiss the indictment.

MEMORANDUM

I. DISCUSSION/ARGUMENT

A. DUE PROCESS

"It is a fundamental principle in our legal system that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." FCC V FOX TELEVISION STATIONS, 567 U.S. 239, 253 (2012). The due process clause invalidates criminal prosecutions when the government attempts to take away "someone's life, liberty, or property under criminal laws so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." JOHNSON V UNITED STATES, 135 S. Ct 2551,2556 (2015). In the context of vagueness challenges the touchstone of whether a statute is unconstitutionally vague or gives fair notice "is whether the statute, either standing alone or as constructed, made it reasonably clear at the relevant time that the defendant conduct was criminal." Id UNITED STATES V LANIER, 520 US 259,267 (1997).

Unlike a First Amendment challenges on vagueness, the due process void for vagueness inquiries focuses on "whether a statute is vague as applied to the particular facts at issue." HOLDER V HUMANITARIAN LAW PROJECT, 561 U.S.1, 18-19 (2010). Further the inquiry "addresses at least two connected but discrete due process concerns; first, that regulated parties should know what is required of them to act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." id,

13

FOX TELEVISION STATION, 567 U.S. at 254; BECKELES V UNITED STATES 137 S. Ct. 886, 892 (2017).

Here, the facts and circumstances demonstrated that not only did The Chemours Company failed to give Mr. Xu fair notice that any violation of the terms of the NDA would subject him to criminal sanctions under united states trade secret laws, it created the impression that enforcement of the NDA would be construed and enforced under the laws and jurisdiction of Ontario Courts which under such law, does not attach criminal liabilities for the conduct alleged in the indictment.

As an initial matter, paragraph 9 of the indictment avers on March 21, 2011, when Mr. Xu joined E.I. DuPont Canada ("DuPont") / [The Chemours Canada], his employment was conditioned on the signing of the NDA. [NDA hereby attached as exhibit "A"] The NDA in question specifically states in section 4 (VII) "employee acknowledges that in the event of breach of any of the terms of this Agreement, DuPont/[Chemours] shall have sustained irreparable harm and shall be entitled to [s]pecific performance and injunctive relief," id. Exh."A" at 2 (emphasis added). This is the first indication that Chemours did not give notice that any violation of the NDA "made it reasonably clear at the relevant time Mr. Xu conduct was criminal." id. LANIER, supra at 267. In fact, it explicitly states breaches would be under civil relief.

Next, section 5 subsection (I) states "this Agreement contains the entire [a]greement and understanding of the parties and supersedes any other such agreement and understanding and no oral representations have been made by either party that vary or modify any of the terms herein. Any modifications must be express written format signed by both parties hereto." This portion of the agreement makes clear any modification would have to be in express writing. Subsection (II)

14

has a choice of law and jurisdiction provisions; "this Agreement shall be construed, performed and enforced in [a]ccordance with the laws of Ontario. the parties agree to submit to the jurisdiction of the [sic] courts of Ontario" id. (emphasis added).

This, according to the Agreement, the "construction" and "enforcement" of confidential, proprietary and trade secret information "breaches" would be "in accordance to the laws of Ontario" and submitted to the jurisdiction of the courts of Ontario". Interestingly enough, this NDA which Mr. Xu employment was conditioned upon, makes no mention of U.S trade secret laws or criminal punishment under any U.S. statute. The indictment does not even suggest that Mr. Xu was under any regulation enforceable under U.S. law. "Precision and guidance is necessary so that the U.S. Government do not enforce the law in an arbitrary or discriminatory way". id, FOX TELEVISION STATION, supra at 254.

More importantly, Mr. Xu is a Canada Citizen. The Chemours Canada Company is incorporated under the laws of Canada and the office in which Mr. Xu worked was based in Ontario Canada. On these facts, along with the fact the government does not offer anything to the contrary in its indictment, makes clear that Mr. Xu did not have reasonable knowledge that U.S. trade secret laws governed his employment and indeed, according to the NDA, it did not. Further, Chemours choice of law and forum selection provisions incorporated in the NDA cannot be ignored. it must be given its proper weight. In a commercial context, its beyond dispute that federal courts enforce these provisions and dismiss actions before them that's contrary to choice of law and forum provisions, e.g.  W&S CO..V SALVAGNINI RANSFERICA S.P.A 806 F.2d 1045,1046(fed. Cir) (dismissing complaint due to choice of forum clause designating Italy as courts of jurisdiction); national equipment rental Ltd V szuhent, 375 U.S. 311 (1964) (parties

15

frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction). As criminal laws are construed more narrow due to a person's liberty, this principle should compel the same result here. Under the laws of Ontario, as the government has grudgingly conceded to this court in two prior bail hearings, the conduct alleged by the government does not amount to an offense. Indeed, the Canadian supreme court has awent so far as striking down such statute from being enforceable under Canadian law. See e.g. R. V STEWARD, 1988 canl11 86, [1988] 1 SCR 963 [26 MAY 1988]

The above demonstrates, construing each fact alleged in the indictment as true, as Chemours is who gives the U.S government jurisdiction to impose its law in Canada territory in this particular situation, it has neglected its constitutional duty to inform Mr. Xu of that fact he would be governed under a foreign law where he was under the expectation of Canada law, and therefore, "just as in the first amendment context, the due process clause protection against vague regulations does not leave regulated parties at the mercy of the noblesse oblige." id. FOX TELEVISION STATION 567 U.S at 257 (quoting U.S v STEVENS, 559 U.S 460, 480 (2010)). Accordingly, the terms of Mr. Xu employment would "failed to provide a person of ordinary intelligence fair notice" of criminal punishment id.

## B. INTERNATIONAL COMITY

International comity is both a principle guiding relations between foreign governments and a legal doctrine by which U.S courts recognize an individual act under foreign law. see IN RE MAXWELL COMMUN CORP, 93 F.3d 1036, 1046 (2nd Cir. 1996). "Comity, in the legal sense, is neither a matter of absolute obligation, on one hand, nor of mere courtesy and good will, upon another. " HILTON V GUYOT, 159 U.S. 113,163-64 (1985) (International quotations

omitted). "it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and the rights of its own citizens or of other persons who are under the protections of its laws." id.

Under this doctrine it "is not just a vague political concern favoring international cooperation when it is in our interest to do so but rather it is a principle under which judicial decision reflect the systems value of reciprocal tolerance and good will." id. SOCIETE NATIONALE INDUSTRIELLE AEROSPATIALE V UNITED STATES DIST. COURT FOR SOUTHERN DIST. 482 U.S. 522,555,107 S. Ct. 2542, 96 L. Ed. 2d 461(1987). While courts approach defendants international comity defense from a "legal sense", the focus is based upon the broader principles underlying the doctrine, like the principle of reasonableness, see RESTATEMENT (THIRD) OF FOREIGN RELATION LAW OF THE U.S. section 403 Similarly, under the conflict of law principle, courts do not require a true conflict between laws of two nations ( e.g. compliance with the laws of both countries being impossible) to dismiss on comity grounds. See MUJICA V AIRSCAN, 771 F. 3d 580, 600 (9th Cir. 2014); FREUD V REP. OF fr., 592 f. supp. 2d 540 574 (S.D.N.Y 2008). Under this courts analysis, international comity counsels for dismiss of the instant indictment as it's volatile of the principle of reasonableness and customary international law.

 As discussed above, Supra Section A., the choice of law and forum selection clauses are the central issue in this matter. Under this courts reasonableness analysis, a factor that must be given substantial weight is that both clauses are generally and consistently enforced by every civilized nation as they derive from principles of every major legal system around the world, therefore,

17

both clauses are common practice amongst nations taking on the character of Customary international law. See RESTATEMENT 102((1)(C) & (4). Additionally, every major legal system around the world also has incorporated in to its laws the functional equivalent to the due process clause.

The implication of the instant prosecution, on these circumstances, can have on the international spectrum is substantial and volatile of fundamental fair play and justice. This is best illustrated by the fact that there are many other Countries besides Canada that have the same trade secret policies that does not attach criminal punishment to the conduct alleged here, e.g. Australia, Singapore, Malaysia and the United Kingdom, each of these countries conduct trade and other related economic transactions with the U.S and also has U.S. companies operating within their borders. These foreign branches regularly enter in to binding agreements with choice of law and forum selection clauses designating that country's laws and its courts for adjudication of any disputes from breaches of confidentiality. In these countries which does not attach criminal liabilities under its trade secret laws, by doing so under U.S. law without notice of any additional sanctions under those laws, does not provide employees with guidance or notice that their conduct needed to be tailored to different laws. According to what the government's view is based off this current prosecution, notice of potential criminal penalties under U.S trade secret laws is not required and the need to enforce the choice of law and forum selection clause is not required by them. Allowing such a practice would not only impose more severe penalties than employees agree upon, it provides these companies with unfair advantage over citizens of these foreign countries who did not agree to the United States having jurisdiction over their persons as

18

a condition of their employment did, thus amplifying the need for strict enforcement of the notice requirement and these clauses in NDA's that holds international complications.

The choice of law and forum selection clauses inform foreign citizens that it is their country laws and courts that will resolve any disputes. it Gives reasonable notice of penalties breaches subject them to and what conduct to avoid not to face criminal penalties. This undoubtedly interfere with domestic policies of these countries and the rights of its own citizens or of other persons who are under the protection of its laws." id. HILTON 159 U.S. 113, 164 (1895); REMINGTON RAND V BUS. SYS. INC., 830f12d 1260, 1266 (3rd Cir.1987). By the companies not giving any indication of U.S. laws, it deprives employees of warning or the opportunity to accept or reject these terms of employment, as this adds more severe penalties than contemplated by the NDA terms, by those unaware. Further, the reasonableness inquiry established by the 3rd circuit in MANNINGTON MILLS, INC V CONGOLEUM CORP, 595 F. 2d 1287,1297-99 (3rd Cir.1979), calls for a contrary result then what the government desires here. Indeed, the jurisprudence in this area speaks of "due recognition of our self-regarding respect for the relevant interest of foreign nations". id. ROMERO V INTERNATIONAL TERMINAL OPERATING CO., 358 U.S. 354, 382-83 (1959) If the united states seeks to enforce its trade secret laws in a foreign governments territory due to one of its company's foreign branches operating in its countries, it must comply with the demands of that particular government constitutional mandates, in this case Mr. Xu rights to fundamental justice under the Canadian Charter of Rights and Freedoms has been violated. see section 7.

Moreover, of particular relevance here, the supreme court has indicated that "forum selection and choice of law clauses are presumptively valid where the underlying transaction is

19

fundamentally international in character" id. BREMEN V ZAPATA OFF SHORE CO., 407 U.S. 1,14 (1972). Further in such a case as this "concerns of international comity,...and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that [the court] enforce the parties agreement, even assuming that a contrary result would be forthcoming in a domestic context". MITSUBISHI MOTORS CORP. V SOLER CHRYSLER-PLYMOUNTH INC. 473U.S. 614,629 (1985); AUBREY GOLF, LLC V AUBREY,189 Fed. appx.82,85 (3rd Cir.2006) (citing COASTAL STEEL CO V TILGHMAN WHEELABRATOR Ltd.,709 F.2d 190,202 (3rd Cir.1983). In the age where transnational economic activity is the norm, setting such precedent under the instant prosecution could cause international friction. C.F Restatement section 414 (2) (European community proposing the "Vredeling Directive" designed to get "a clear picture of the activities of parent undertaking and its subsidiaries and to give advance notice of decisions that might have serious consequences for the interest of the employees of its subsidiaries in the community") (quoting the Vredeling proposal, 21 int'l. leg. mat. 422 (1982) & Pipkorn, " the draft directive on procedures for informing and consulting employees," 20 COM. MKT. L. REV. 725 (1983).

It's a longstanding rule that "an act of congress ought never to be construed to violate the law of nations if any other possible construction remains..."MURRAY V SCHOONER CHARMING BETSY, 6 (2CRANCH) 64,118, 2 L. Ed. 208 (1804); Also see LAURITZEN V. LARSEN,345 U.S. 571,578 (1958). Accordingly, the possible international consequence of implementation of such a prosecution counsel for dismissal.

## C.  PRESUMPTION AGAINST EXTERRITORIAL

"It is a longstanding principle of American law "that legislation of congress, unless a

contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

States". EEOC V ARABIAN AMERICAN OIL CO. 499 U.S. 244,248 (1991) (ARAMCO)

(QUOTING FOLEY BROS, INC. V FILARDO, 336 U.S. 281, 285 (1949)). IN MORRISON V

NATIONAL AUSTRALIA BANK LTD., 561 U.S. 247(2010), the supreme court established that

the presumption against extraterritorial application of a statute does not relate to the court's

jurisdiction to hear a case but to the canons of statutory construction which "helps ensure that the

judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy

consequences not clearly intended by the political branches." id. KIOBEL V ROYAL DUTCH

PETROLEUM CO, 569 U.S 108,116 (2013). The frame work consists of a two-step inquiry for

analyzing extraterritoriality issues. See MICROSOFT CORP. V UNITED STATES, 829 F.3d

197, 210 (2nd cir.2016). The two-step inquiry in analyzing whether the presumption is rebutted

first starts with determining whether the statute gives clear indication of extraterritoriality".

KIOBEL at 118 (quoting MORRISON, 561U.S at 265). Step two inquires on the "focus" of the

statute- if the relevant conduct to the statute "focus" occurred in the United States, then it

involves a permissible domestic application even if some conduct occurred abroad. But if the

relevant conduct to the focus occurred in a foreign country, then the case involves an

impermissible extraterritorial application regardless of any conduct that occurred in the United

States, MORRISON at 266-70. In Morrison, the supreme court held that if extraterritoriality was

found at step one, then the inquiry ends there and the statute applies abroad. However, recent

supreme court case law provide the lower courts with discretion to depart from the strictness of

the Morrison/Kiobel two-step inquiry and go directly to step two's focus inquiry where, if

21

circumstances like the instant matter proves that the sequence of the two-step inquiry could be

demonstrably unworkable, then a district or appellant court could start at the "focus" of the

statute to discern whether its application would be violative of a constitutional or international

law as the presumption is to "serve to protect against unintended clashes [b]etween our laws and

those of other nations which could result in international discord." id. ARAMCO, 499 U.S. at

248 (citing MCCULLOCH V SOCIEDAD NACIONAL DE MARINEROS DE HONDURAS,

372 US 10,20-22, 9 L Ed 2d 547, 83 S ct. 671(1963).  In RJR NABISCO, INC. V EUROPEAN

COMMUNITY 136 S. Ct 2090 (2016) The court applied the presumption on the Racketeer

Influenced and Corrupt Organizations act (RICO), 18 U.S.C.S sections 1961-1968. While finding

evidence of extraterritoriality at step one for some § 1962 and not § 1964, the court stated in a

footnote that "it will usually be preferable for courts to proceed in the sequence that we have set

forth. But we do not mean to preclude courts from starting [a]t step two in appropriate cases".  id

RJR NABISCO,136 S. Ct at 2101 FN.5. The court compared PEARSON V CALLAHAN, 555

U.S. 223 236 (2009) IN SAUCIER V KATZ, 533 U.S. 194 (2001) where the court reconsidered

its prior mandated two-step sequence for resolving government officials qualified immunity

claims. the Pearson court concluded "that, while the sequence set forth there is often appropriate,

it should no longer be regarded as mandatory." PEARSON, supra. This was a result of the

particular facts of Pearson providing recognition that "there are circumstances in which the first

step...may create a risk of bad decision making, id. "In such situations, there is a risk that a court

may not devote as much care as it would in other circumstances to the decision of the

constitutional issue." id Pearson at 239. RJR NABISCOS recognition of a mandated sequence of

the "two-step" inquiry in the presumption analysis is analogous to Pearson and therefore allows

departures from the sequence in situations that "a risk of conflict between the American statute

and a foreign law... is evident". id. RJR Nabisco. 136 S. Ct. at 2107.   The facts and

circumstances of this case demonstrates the need to bypass step one and go straight into the focus

of the statute. AS Explained in supra section B, the potential for international discord is

substantial and is amplified by other countries besides CANADA with similar trade secret laws

and policies on enforcing choice of law and forum selection clauses.

**1832 FOCUS**

(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is

produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other

than the owner thereof, and intending or knowing that the offense will, injure any owner of that

trade secret, knowingly;

1) Steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud,

artifice, or deception obtains such information;

2) Without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads,

alters, destroys, photocopies, replicates, transmits, delivers, send, mails, communicates, or

coveys such information;

3) Receives, buy, or possesses such information, knowing the same to have been stolen or

appropriated, obtained, or converted without authorization.

4) Attempts to commit any offense described in paragraphs (1) through (3); Or

5) Conspires with one or more other persons to commit any offense described in paragraphs (1)

through (3), and one or more of such persons do any act to effect the object of the conspiracy...

The alleged conduct which the purview of (a)(2) and (a)(5) focuses on clearly occurred in

Canada. As for section (a)(2), the governments only allege that all information that included trade

secrets was "downloaded" from the Chemours-Canada regional office in Ontario Canada. The

indictment alleges on or about December 8,2015 Xu sent two emails from his Chemours work

email to his personal email account, which attached six business confidential documents related

to project 1,... some of these documents included trade secret and confidential information."

paragraph  30.  The other allegation which avers "copying" or "downloading" for the

"conversion" of "trade secret information" is paragraph 60, where it alleges on or about June 13,

2016, Mr. Xu copied numerous confidential and proprietary documents, "some of which

contained trade secret information, which belonged to Chemours, into removable drives." id. the

purported "downloads" and "copying" of trade secret information was alleged to have occurred in

Canada. Additionally, all other allegations of Mr. Xu conspiring to convert trade secret

information occurred either in Canada or china, with the exception of what was alleged in

paragraph 57, which avers while Mr. Xu was on a tour of Chemours sodium cyanide plant

located in Memphis, he secretly took five photos of "confidential" and proprietary" system

diagrams without Chemours knowledge or permission.id. The government does not allege,

however, that this was "trade secret" information as it was in a general area of the plant where

any employee from executives to maintenance had access to it. The focus of (a)(2) and (a)(5) is

not confidential or proprietary information but conversion of "trade secret" information.

Although the above-mentioned conduct could constitute some conduct did occurred in the

U.S.-the purview of 18 U.S.C. 1837, "The presumption against extraterritorial application would

be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in a case." id Morrison, 561 U.S. at 264. Moreover, as the determinative factor is where the "conduct relevant to the focus occurred," which it's clear that was in Canada, "The case involves an impermissible extraterritorial application regardless of [a]ny other conduct that occurred in U.S. territory.id". RJR NABISCO,136 S. Ct. 2101.

**CONCLUSION**

While its clear congress has the express authority to regulate conduct in foreign Countries such as Canada, that authority has limitations, which as demonstrated above, has been exceed in the instant case. Chemours-Canada presence in Canada is what confers the U.S. authority to exercise its jurisdiction over Mr. XU, and because he is a Canadian Citizen who is unfamiliar with U.S. law, Chemours-Canada, as an extension of the U.S. government must conform with the constitutional mandate in giving fair notice of any regulations and consequences under U.S. law that could result from being employed by Chemours-Canada to give them the opportunity to make a reasonable decision whether they agree to those terms and if so, to tailor their conduct to confirm with those regulations. Instead, Chemours violated that mandate as well as international practice and custom by requesting this prosecution when it explicitly entered into a NDA which has terms and consequence for any breaches of that agreement, which included trade secret information. Under that binding NDA, it's a choice of law and forum selection provision that makes it extremely clear that any breaches or disputes that arise under the NDA would be enforced, construed and performed under the laws and jurisdiction of the Courts of Ontario Canada. Such provisions are enforced all over the world, including in this Country.

The prosecution of Mr. Xu here seeks contrary results and offends the notion of fair play and

25

fundamental justice that could have foreseen and unimaginable international consequence. An act of congress should not be construed to volatile international law and if any other possible construction remains.

Accordingly, for the foregoing reasons, Mr. Xu respectfully request this Honorable Court to terminate this prosecution by Granting his Motion and dismissing the indictment.

Respectfully submitted,

_____/s/_____

JEREMY H.G. IBRAHIM, ESQUIRE

_____/s/_____

CAROLINE GOLDNER CINQUANTO, ESQUIRE

Date: January 25, 2018

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the  Defendants Omnibus Motion to

Dismiss has been served via ECF and email upon:


Jamie M. McCall, AUSA
Alexander S. Mackler, AUSA
United States Attorney's Office
District of Delaware
1007 N. Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046




          /s/ _____
          JEREMY H.G. IBRAHIM, ESQ.

Date: January 25, 2018

27