

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*The Nemours Building*
*1007 N. Orange Street, Suite 700*      *(302) 573-6277*
*P.O. Box 2046*                          *FAX (302) 573-6220*
*Wilmington, Delaware 19899-2046*

April 25, 2018

**VIA CM/ECF**

The Honorable Leonard P. Stark
Chief United States District Judge, District of Delaware
844 King Street, Room 6124
Wilmington, DE 19801

    Re:  *United States v. Jerry Jindong XU*
           **Docket No. 1:17CR00063-LPS**

Dear Chief Judge Stark:

    Please accept this letter in response to the defendant's Motion to Reopen Detention Hearing (the "Motion"), filed in open court on April 18, 2018.[1] D.I. 73. The defendant has contested detention on at least three (3) other occasions before three (3) different judges,[2] and each time he has remained in custody. This attempted fourth bite at the apple should also fail because even if this Court were to assume that the proffered information is new, the defendant has failed to demonstrate that it would have a "material bearing" on the detention analysis—namely, whether the defendant will appear as required if released. 18 U.S.C. § 3142(f). Nor does the defendant's pretrial detention violate due process. Thus, no basis exists to reopen the detention hearing under the Bail Reform Act and the Motion should be denied. *Id*.

    As this Court knows, in a case such as this where a judicial officer (in fact, more than one) has already conducted a hearing and entered a detention order, the Court's power to reopen the record is limited. In particular, Section 3142(f) provides that a judicial officer may reopen a detention hearing

> before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

---

[1] The defendant subsequently filed several exhibits, containing emails from 2017, in support of his Motion.
[2] First, upon arrest, the defendant elected to have a detention hearing before a magistrate judge in the Northern District of New York, which he lost (5:17-MJ-367); second, after his initial appearance in this District, Chief Magistrate Judge Thynge attempted—through two hearings—to mediate acceptable conditions of bail, which ultimately failed for the same reasons this Court later denied the defendant's bail appeal; and third, two hearings in this Court. D.I. 70, 71.

1

18 U.S.C. 3142(f). Therefore, to prevail here, the defendant must establish that he is in possession of newly discovered information that, if considered by the Court, would demonstrate that he is no longer a flight risk. *Id.*; *United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (refusing to reopen detention hearing pursuant to 18 U.S.C. § 3142(f) where defendant failed to produce evidence that would cause the court to "change" its mind). He has failed to do so.

In support of his Motion, the defendant claims that three "material facts have developed which are relevant to [his] request to revisit the issue of release[.]" D.I. 73, p. 3. Little of the information is new, and none of it is material.

The defendant first asserts that the third-party custodians ("TPCs") he presented before this Court in December have "had an increase in funds due to their respective employment and ha[ve] represented that both are willing to use portion of those earnings up as security for Mr. Xu as release." *Id.* at 3. These new claims, even if true, are not material.[3] As stated in both prior hearings before this Court, the Court's many concerns did not include the TPCs' finances. Rather, the Court was dissatisfied because, among other reasons that included a detailed record of the Section 3142 factors[4]: the defendant has no connection to this District and possesses the means and incentive to flee; the defendant "propos[ed] three third-party custodians, only one of whom" was present for the last proceeding; the proposed TPC(s) would not be home during the day and the defendant would be left alone with only the TPC's 84-year-old aunt at home; and, critically, the TPC lacked any "moral suasion" over the defendant, which the Court identified as "*the feature* of the third-party custodian[.]"[5] D.I. 71, p. 7, 33-34 (emphasis added). U.S. Probation shared those concerns, and the government continues to agree with the Court's rationale. It remains unclear who, exactly, would be the third-party custodian—the defendant continues to propose a combination of individuals, all of whom work and spend the bulk of the day, and week, outside the home. D.I. 73, p. 4. The fact that the proposed TPC(s) now reportedly have more income does not materially impact any of the grounds of this Court's prior ruling.

Second, the defendant writes he "can now provide the Court with substantial support to address its concerns of releasing a foreign defendant under the supervision of TPC who have (sic) no prior personal relationship[.]" *Id.* at 3. The out-of-circuit cases the defendant cites are neither "substantial" nor new—the most recent was decided in 2015. *Id.* Further, the government provided several cases in support of its position in advance of the December 18, 2017 hearing, and the defendant was provided an opportunity to respond during the hearing. *See* D.I. 36, p. 2-3. The primary case the defendant cites in support of his assertions, *United States v. Karni*, involved a foreign defendant released to a staffed shelter, operated by a synagogue and social service agency. 298 F. Supp. 2d 129, 133 (D.D.C. 2004). There, the judge further ordered that the third-party custodian "must commit to have someone with Defendant on a twenty-four hour basis, seven days a week." *Id.* This case is distinguishable for all the concerns regarding the proposed TPC(s) that this Court outlined in December. After considering the lack of a connection between the defendant—with, in this Court's words, "no ties to this District"—and the proposed TPC(s), the

---

[3] The fact that the defendant provides no supporting documentation (e.g., an affidavit from the proposed third-party custodians) does not impact the government's response: even if they are verified, such facts are not material.
[4] The government hereby incorporates its arguments from both December 1 and December 18, 2017, and the Court's rationale from December 18, 2017, into this Response.
[5] This Court observed of the purely financial relationship, "I don't recall ever seeing a scenario where someone didn't have a pre-existing relationship with the defendant and where they were being paid to be the custodian."

Court said that this was "at best extraordinarily unusual," causing the Court to be "not comfortable with it in the totality of circumstances. It does not, in the totality, give me reasonable assurance that Mr. Xu would appear" in court if released. D.I. 71, p. 32. Nothing in the defendant's Motion gives this Court any reason to change its position. The cases cited by defendant are neither new nor material.

Third, the defendant asserts "there is a strong likelihood that neither Chemours or the U.S. government provided notice to Mr. Xu that his alleged conduct was criminal or subjected him to punishment of imprisonment under U.S law[.]" D.I. 73, p. 3. The defendant acknowledges that this is part of his existing Omnibus Motion before this Court. *See* D.I. 50. Such a position, which the government has contended in its Response is meritless, has no bearing on whether this Court has new and material reason to reverse its earlier finding on pretrial detention.

The defendant also alleges a due process violation: that the length of his pretrial detention, currently approximately eight (8) months, necessitates "a new hearing where more is required of the government than the evidence it previous (sic) relied on to persuade the Court to order continued detention." D.I. 73, p. 8. The defendant's due process rights have not been violated here because, among other reasons, much of the delay is a result of his own actions.

Detention-related "due process judgments should be made on the facts of individual cases" and, in addition to the usual Section 3142 factors, "should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986); *see also United States v. Cos,* 198 F. App'x 727, 732 (10th Cir. 2006) (stating the Tenth Circuit's similar standard as (a) the length of pretrial detention; (b) the extent of the government's responsibility for delayed trial; and (c) the strength of the evidence upon which the detention was based). Each of these factors weighs against the defendant.

As this Court well knows, eight (8) months is not an unusually long time for pretrial detention in this district—and even if it were, "Length of detention will rarely by itself offend due process." *United States v. Millan,* 4 F.3d 1038, 1044 (2d Cir. 1993) (internal citation omitted); *see also United States v. Stanford,* 722 F.Supp.2d 803, 2010 WL 2745780 (S.D.Tex. July 7, 2010) (collecting cases upholding pretrial detention of more than nineteen (19) months).[6] The instant case, as the defendant acknowledges, is complex. And the strategy of one side—that is, the defendant—is the primary reason for any delay. The defendant, through two prior counsels, requested three (3) extensions of the motions deadlines totaling one hundred ten (110) days. D.I. 11, 35, 46. The government consented to each and, by contrast, asked for an extra eleven (11) business days to respond to defendant's motion to dismiss. D.I. 54, 60. The defendant has also

---

[6] Several circuit courts have upheld substantially longer pretrial detentions. *See, e.g.*, *United States v. Briggs*, 697 F.3d 98, 102-03 (2d Cir. 2012) (due process not violated by pretrial detention of nearly 26 months because defendant bore some responsibility for delay, and government had received information that he would flee or take his own life if released); *United States v. Infelise*, 934 F.2d 103, 104-05 (7th Cir. 1991) (due process not violated by potential two-year detention because prosecution not responsible for delay and defendant shown to be dangerous); *United States v. Quartermaine*, 913 F.2d 910, 918 (11th Cir. 1990) (due process not violated by prospect of eight-ten month detention where pretrial detention was otherwise appropriate); *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (due process not violated by ten-month pretrial detention because government not responsible for delay and defendant posed danger to community and flight risk).

now fired three sets of attorneys—in December, March, and again last week—which continues to lengthen the pretrial process.[7]  Thus, no due process violation exists.

The defendant's Motion concludes by stating that the government's case lacks strength, and then repeats a concern about the length of pretrial detention.  This Court stated in December that "the evidence is strong."  D.I. 71, p. 29.  The defendant presents nothing new to rebut that assessment.  The government addressed, above, the claims regarding length of pretrial detention.

In rendering its original decision, this Court held two separate hearings, heard testimony from two proposed third-party custodians (the same custodians the defendant presents in the instant Motion), reviewed several documents presented by the defendant, and heard extensive argument—twice—from both the defendant and the government.  The Court then rendered its decision that the government met its burden of "prov[ing] by a preponderance of the evidence that there are no combination of conditions that I could impose that could reasonably assure me, notwithstanding that risk of flight, Mr. Xu would appear for all necessary court events."  D.I. 71, p. 28.  When considered against that backdrop, the defendant's proffered "new information" fails to address this Court's substantial concerns.  The Motion should be denied.

        Respectfully submitted,

        DAVID C. WEISS
        UNITED STATES ATTORNEY

BY:   */s/ Alexander S. Mackler*
        Alexander S. Mackler
        Jamie M. McCall
        Assistant United States Attorneys

Cc:  Jerry Jindong Xu, *Pro Se* – via First Class Mail

---

[7] The defendant's other due process complaints—discovery-related and the need to find an attorney—are also directly attributable to his firing of three previous sets of attorneys.