## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

         Crim. No. 17-63-LPS

JERRY JINDONG XU,

        Defendant.

## MEMORANDUM ORDER

At Wilmington this **30th** day of **May, 2018,** having considered Defendant Jerry Jindong

Xu's ("Defendant" or "Xu") Motion to Reopen Issue of Bail (D.I. 73) ("Bail Motion") and

Motion for CM/ECF Login (D.I. 79) ("Motion for Electronic Filing"),

**IT IS HEREBY ORDERED** that Xu's Bail Motion (D.I. 73) is **DENIED**, and Xu's

Motion for Electronic Filing (D.I. 79) is **DENIED WITHOUT PREJUDICE.**

1.      Xu, a Canadian citizen, is charged with conspiracy to commit theft of trade secrets

in violation of 18 U.S.C. §§ 1832(a)(2) and (a)(5). (*See* D.I. 5 ¶¶ 8, 14-15) On August 25, 2017,

a court in the Northern District of New York held a bail hearing and ordered that Xu be detained.

(*See* D.I. 15) On October 11, 2017, having given the parties an opportunity to address concerns

related to proposed conditions of release, Judge Thynge ordered that Xu remain detained

consistent with the Northern District of New York detention order. On December 1, 2017, the

Court held a hearing where it again considered the issue of Defendant's pretrial release status,

and, after additional proceedings on December 18, 2017, the Court ordered that Xu remain

detained. (*See* D.I. 70, 71, 45)

2.     **Bail**.  On April 18, 2018, Xu filed a motion in open court to reopen the issue of

his detention under both 18 U.S.C. § 3142(f) and the Due Process Clause.  (*See* D.I. 73)  On

April 25, 2018, the government responded.  (*See* D.I. 79)  Xu filed his reply on May 18, 2018.

(*See* D.I. 83)

3.     Under § 3142(f), a judicial officer may reopen a detention hearing "at any time

before trial if the judicial officer finds that information exists that was not known to the movant

at the time of the hearing and that has a material bearing on the issue whether there are

conditions of release that will reasonably assure the appearance of the person as required and the

safety of any other person and the community."  To warrant reopening, the information must be

(i) "not known" at the time of the earlier hearing and (ii) "material" to the detention analysis.  Xu

has not offered any information that meets these criteria.

4.     Xu asserts that two of his (three) previously proposed third-party custodians

("TPCs") "ha[ve] had an increase in funds" and are willing to post a portion of their earnings as

security for his release.  (D.I. 73 at 3)  While presumably this is new information, it does not

change the Court's view on whether the proposed TPC arrangement would reasonably assure

Xu's appearance as required.  As the government correctly points out, the Court has never been

concerned about the TPCs' finances.  (*See* D.I. 71 ("Tr.") at 32-33)  Rather, the Court has been –

and remains – uncomfortable with the lack of any prior relationship between the proposed TPCs

and Xu.  As the Court explained at the December 18, 2018 detention hearing,

> [T]his isn't about [the proposed TPCs'] credibility so much as [it is
> about whether] . . . I [can] get reasonably comfortable with a very
> unusual situation, a situation that many judges who have looked at
> something similar have said this is not what a third-party custodian
> is meant to be.  There is no relationship whatsoever between any of

> the third-party custodians being offered and the defendant.  There
> is plainly no moral suasion. . . .  [M]aybe in some other case, but I
> just do not see it here.

(Tr. at 33-34)  The proposed TPCs' increased earnings and willingness to post bond do not

overcome the lack of moral suasion they would have over Xu or otherwise change the Court's

view of the proposed custodial arrangement.  Thus, it presents no grounds to reopen the detention

hearing.

     5.     The case law Xu offers in an attempt to allay the Court's concerns about his

proposed custodial arrangement is likewise unhelpful.  The cases Xu offers are not new.  While

they may have been previously unknown to Xu, the cases were all available at the time of his

previous bail hearings and were known or should have been known to counsel then representing

him.  *See United States v. McIntyre*, 2018 WL 385034, at *3 (D.N.J. Jan. 10, 2018) (holding

cases submitted by defendant were not unknown at time of earlier bail hearings, despite

intervening changes in counsel); *see also United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir.

1991) (discussing district court rejection of defendants' newly submitted letters from family

because information contained in letters was available at time of bail hearing).  However, even

considering the substance of those cases, they do change the Court's risk of flight analysis as to

Xu.  The circumstances present in the cases cited by Xu differ materially from Xu's proposed

custodial arrangement.  *See, e.g.*, *United States v. Karni*, 298 F. Supp. 2d 129 (D.D.C. 2015)

(granting release of foreign defendant to staffed shelter, where third-party custodian committed to

having defendant monitored 24-7, and another party posted $75,000 bond for defendant, in

addition to defendant's bond).  Thus, they not persuade the Court that the proposed custodial

arrangement here – releasing Xu, who lacks ties to this District and has substantial ties abroad,

3

into the custody of a combination of three individuals who were previously unknown to Xu – is appropriate.

6.       The issues presented by Xu's pending motion to dismiss – and specifically the alleged lack of notice he received regarding the criminality of his alleged conduct – are not a reason to revisit Xu's detention.  Xu's motion to dismiss does not relate to the factors outlined in § 3142(g), and thus does not change the Court's view as to whether any condition or combination of conditions exists that can reasonably assure Xu's appearance as required.

7.       Finally, the newly proposed TPC and conditions of release that Xu now proposes do not alter the Court's assessment of the risk of flight.  It remains unclear – as it was at the December 18 detention hearing – who Xu is proposing to serve as his TPC and what each party is willing to undertake in connection with that responsibility.  (*See* D.I. 73 at 4 ("With three alternate TPCs . . . ."); *see also* Tr. at 33 ("There has been some uncertainty at least on my part as to who is being proposed to undertake the very substantial legal obligation of being a third-party custodian."))  Accordingly, the Court continues to be persuaded that Xu should remain detained under these highly unusual circumstances.  Nor do the additional conditions Xu proposes (with or without the earlier proposed conditions) constitute a combination of conditions that can reasonably assure Xu's appearance.[1]  As the Court explained in December,

_____

[1]Though the Court's analysis has focused on Xu's primary proposals for potential conditions of release, the Court has considered all of the proposals in Xu's motion, including releasing Xu to a halfway house, having Xu sign an irrevocable waiver of extradition and post his home in Florida and Canada as security for his release, and the others listed in his motion.  (*See* D.I. 73 at 9) (listing all proposed conditions of release, as well as alternatives)  The Court is not persuaded that any of these proposed conditions or combination of these conditions will reasonably assure Xu's appearance.  Xu has not identified any specific community corrections facility or halfway house that would both have room to accept him and an individual or individuals willing to undertake the significant obligations of serving as a TPC, including

4

> I'm persuaded also . . . that there are no conditions that I could impose that would reasonably assure me that [Xu] would not flee to Canada to be with his family, to be where he has established his life, to be in a place that . . . may or may not consider what he allegedly did to be criminal conduct, and to be in a place that it remains undisputed . . . will take some substantial amount of time for us to get him back here were he to run to Canada.
>
> I remain again concerned that even though the defendant either has no passport or would give us his passport that given his experience crossing the Canadian border, he would find a way, if he were tempted to do so, to get there.

(Tr. at 31-32)  The Court continues to believe that this is the case, even with the additional or alternate TPC and bail conditions.

8.      In the end, nothing in Defendant's motion alters the Court's conclusion with respect to the § 3142 factors or otherwise persuades the Court that the proposed custodial arrangement would reasonably assure Xu's appearance.

9.      Xu also contends that the length of his detention requires "an automatic review of [his] conditions of release" and subjects his detention to "a heightened level of scrutiny" under the Due Process Clause.  (D.I. 73 at 1)  The Court disagrees.

10.     The Third Circuit has explained that "at some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142 [of the Bail Reform Act]." *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986).  Due process-related determinations should be individualized and take into account the § 3124 factors as well as "the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other

---

ensuring Xu is monitored 24 hours a day, seven days a week and lacks all access to the internet.

has added needlessly to that complexity." *Id.*

     11.    Xu's detention does not violate due process.  As already discussed, the § 3142

factors indicate that Xu should be detained prior to trial.  Though Xu's detention – which, at this

point, has lasted over nine months – has been lengthy, "length of detention alone is not

dispositive as to the due process inquiry." *United States v. Zhang*, 2014 WL 5285928, at *5

(E.D. Pa. Oct. 16, 2014).  As Xu concedes, the case against him is complex, for reasons

including the involvement of voluminous international discovery.  (*See* D.I. 73 at 8)

(acknowledging his "prosecution raises several novel questions" and "demonstrates numerous

complexities")  Critically, Xu is responsible for nearly all of the delay that has occurred to this

point.  When the defendant is the party responsible for the pretrial delay, there is no due process

violation.  *See Zhang*, 2014 WL 5285928, at *5 ("The responsibility of the defendant for the

pretrial delay in this case distinguishes it from others in which courts have found the period of

pretrial detention to violate due process."); *accord United States v. Zannino*, 798 F.2d 544, 549

(1st Cir. 1986) (finding 16-month detention did not violate due process where "the government

ha[d] done all it could to bring [the defendant] to trial expeditiously").  As Xu acknowledges, he

has had great difficulty finding counsel that he feels is capable of representing him.  (*See* D.I. 73

at 8)  While Xu has a constitutional right to represent himself, his decision to change counsel –

before, ultimately, deciding to proceed pro se – is at least partially responsible for the delay in

moving this case forward.  (*See* D.I. 57, 65, 66, 75 80) (relating to Xu's requests to change

counsel and/or proceed pro se)  While Xu contends that the discovery procedures at the Federal

Detention Center (where he is being detained) violate due process, the difficulty Xu may

experience in reviewing discovery – and thus, any additional time needed to prepare for trial – is

a function, at least in part, of his exercise of his right to proceed *pro* se.  Additional delay is due

to Xu's multiple requests for fairly lengthy motion deadline extensions, including most recently

Xu's request for an additional three weeks to file a reply brief.  (*See* D.I. 11, 35, 46, 84

(requesting extensions)  By contrast, the government has requested only eleven-days' worth of

extensions and has otherwise done everything in its power to move the case forward and has

indicated a desire to try this case as soon as possible.  (*See* D.I. 54, 60)  Given these facts, Xu's

continued detention does not violate the Due Process Clause.

12.     **Electronic Filing**.  Xu seeks a login for the Court's CM/ECF electronic filing

system so that "all filing from Defendant can be done electronically."  (D.I. 78)

13.     Under this Court's CM/ECF administrative procedures, "[a] Pro Se party may file

a Motion for Authorization to File Electronically on a case-by-case basis.  The Pro Se party must

indicate that they have independently reviewed all of the tutorials and related topics on the

Court's web site."  *Registration/Training*, U.S. Dist. Court Dist. of Del.,

http://www.ded.uscourts.gov/registration (last visited May 23, 2018).

14.     Xu has not met these requirements.  Therefore, the Court will deny the motion

without prejudice.

**IT IS FURTHER ORDERED** that:

15.     Xu's Letter Motion to Extend Time (D.I. 84) is **GRANTED IN PART**.

Defendant's reply brief related to his motions to dismiss shall be filed no later than **June 8, 2018**.

16.     The time between May 18, 2018 and the filing of Defendant's response shall be

excluded under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*.

17.     A scheduling hearing is set for **June 11, 2018** at **4:00 PM** in Courtroom 6B before

7

Judge Leonard P. Stark to discuss the scheduling of trial, which the Court intends to schedule as quickly as possible.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

8